UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

JESSIE BREARTON,                      )
                                      )
          Plaintiff,                  )      Civil Action No. 14-CV-045-HRW
                                      )
V.                                    )
                                      )      **MEMORANDUM OPINION
DAVID GREEN, Deputy Warden,           )          AND ORDER**
et al.,                               )
                                      )
          Defendants.                 )

                    ****   ****   ****   ****

Jessie Brearton ("Brearton") is an inmate formerly confined at the Little
Sandy Correctional Complex ("LSCC") in Sandy Hook, Kentucky.  Brearton is
presently confined in the Kentucky State Reformatory in LaGrange, Kentucky.[1]
While housed at LSCC, Brearton filed a *pro se* complaint, pursuant to 42 U.S.C. §
1983, naming as defendants the following prison personnel at LSCC: Joseph
Meko, Warden; David Green, Deputy Warden of Security; Terry Hall, Unit
Administrator; Lisa Bricky, Assistant Unit Administrator; M. Fiffe, Correctional
Treatment Officer; Correctional Officer Sparks; Sergeant Gilum; Correctional

---

[1]On June 25, 2014, Brearton notified the Clerk of the Court that he had been transferred to
Kentucky State Reformatory and provided the Clerk with his current mailing address. [D.E. 15].
The Clerk of the Court will be directed to amend the CM/ECF docket sheet to his new  mailing
address.

1

Officer Jekins; Correctional Officer McKinney; and Lieutenant Riggs. [D.E. 1].
Brearton alleges that  these LSCC prison officials, all sued in their individual
capacities, have been deliberately indifferent to his safety needs, in violation of his
rights guaranteed under Eighth Amendment of the U.S. Constitution. [D.E. 1, 4].
Brearton has also requested the appointment of counsel, and has moved for a
preliminary injunction. [D.E. 4] The motion for a preliminary injunction will be
addressed by separate Order.

The Court conducts a preliminary review of Brearton's complaint because
he has been granted permission to proceed *in forma pauperis* and because he
asserts claims against government officials.  28 U.S.C. §§ 1915(e)(2), 1915A.  A
district court must dismiss any claim that is frivolous or malicious, fails to state a
claim upon which relief may be granted, or seeks monetary relief from a defendant
who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08
(6th Cir. 1997).  The Court evaluates Brearton's complaint under a more lenient
standard because he is not represented by an attorney. *Erickson v. Pardus*, 551
U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003).  At this
stage, the Court accepts Brearton's factual allegations as true and liberally
construes his legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S.
544, 555-56 (2007).

## FACTUAL BACKGROUND

Brearton states that in August of 2013, inmate Jackson approached him and told him that if he wanted "to stay alive while on this yard," Brearton had to pay him "yard tax." Brearton states that he told Jackson that he was already paying "yard tax" to other inmates to live in the general population unharmed. [D.E. 4-1, Page ID# 19]. Brearton states that inmate Jackson then punched him in the face and, as he attempted to run from inmate Jackson, another inmate tripped him, causing him to fall. Brearton states that after this incident, both he and inmate Jackson were escorted to the Special Management Unit for a while, but that he was released back to the general population after prison officials confirmed that inmate Jackson initiated the attack on Brearton. [D.E. 4-1, Page ID# 20].

A few months later, in December of 2013, Brearton states that he told Dr. Wiggins, a prison official at LSCC, that other inmates were extorting him and that he had suffered multiple beatings for late extortion payments. Brearton states that Dr. Wiggins relayed this information to LSCC security officials, and that he was then placed in Protective Custody ("PC"), pursuant to Correctional Procedures and Policy ("CPP") 18.15.

Brearton states that pursuant to CPP 10.2, PC inmates are to be segregated at all times from the general population inmates, including recreational activities.

Brearton states that on December 27, 2013, prison officials asked him if he wanted to be released from his cell for recreation time, and he indicated to them that he did. Brearton states that he was then released for recreation time, and that after his cell door had closed and locked behind him, unbeknownst to him, a general population inmate was waiting on the walk for him. Brearton states that after seeing what had transpired, Officer Sparks came on the walk and placed him and the general population inmate back in their respective cells before he was harmed.

However, Brearton states that on the following day, December 28, 2013, when he was released for his scheduled recreation time, the same event occurred, with the same general population inmate being released on recreation at the same time Brearton had been released, and that the same prison staff (Correctional Officers McKinney and Sparks and Sergeant Gilum) were on duty on these same two days. Brearton also claims that these prison officials disregarded his safety and security needs by placing him in the shower with inmate Cell 4, a general population inmate, and then locking the shower door. Brearton states: "Sgt. Gilum was with the other officials pointing and laughing at Brearton['s] plight. These official[s] purposely placed Brearton in a condition of confinement in hopes of his being harmed or killed by inmate Cell 4." [D.E. 4-1, Page ID# 21]. Brearton further claims that these same three prison officials disclosed to other inmates that

4

he is an "informant," also known as a "snitch," which subjected him to being attacked and/or harassed by other inmates, all in violation of his safety and security needs.

Brearton submitted a grievance to LSCC prison staff about this matter. [D.E. 1-1, Page ID# 5]. In rejecting his grievance, Brearton was advised that the issue he was grieving is non-grievable because it concerns a Classification Committee decision. [D.E. 1-1, Page ID# 7]. Brearton then wrote David Green, Deputy Warden of Security, about this matter. [D.E. 1-1, Page ID# 9]. Brearton received a response from both Deputy Warden Green and LSCC Warden Meko about the matter of his safety and security needs. [D.E. 1-1, Page ID# 8].

## DISCUSSION

To assert a viable claim under § 1983, a plaintiff must establish that his constitutional rights were violated by one acting color of law. Plaintiff does not specify which of his constitutional or statutory rights the defendants have allegedly violated. Liberally construing his complaint, it appears that plaintiff's claims are confined to claims arising solely under federal law and that plaintiff's complaint contains no state law claims. To reiterate, Brearton expressly states that he is suing the defendants only in their individual capacities. Regardless, Brearton is not entitled to proceed with this complaint against all ten of the named defendants.

5

A.     **Claims against LSCC Warden Joseph Meko**

Brearton names LSCC Warden, Joseph Meko as a defendant.  It appears that his claim against the Warden may be based on Warden Meko's letter to him dated January 28, 2014, regarding Recreation.  In this letter, Warden Meko states:

> I have discussed this matter with Supervisory Staff in the Special Housing Unit.  Should you find yourself in a danger situation on the range you are to return to your open cell, signal on the intercom to close your cell and request assistance.
>
> You have been apprised of this by Sergeant Gillum on numerous occasions in part however, you refuse to heed his advice and continue to be indifferent in this matter.
>
> This should address your concerns.

[D.E. 1-1, Page ID# 8].

Brearton does not state specifically what actions Warden Meko took or any conduct by Warden Meko that violated his constitutional rights.  It appears that Brearton named the Warden as a defendant due to his supervisory position at the prison.

It is well settled that a supervisor is not liable under § 1983 solely because of his being in a supervisory position.  In other words, being a supervisor does not automatically entail liability § 1983; personal involvement of that supervisor is required.  *See Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir.), *cert. denied*, 459 U.S. 833

6

(1982) ("The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees."). Thus, supervisory liability must be premised on either direct or personal involvement of the named defendant. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). *See also, Carrie v. Rios*, 08-CV-13-KKC, 2008 WL 320329 at *2 (E.D. Ky., February 4, 2008) (supervisor must "have at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct").

In the present action, other than naming Warden Meko in the Complaint, Brearton has failed to articulate any facts from the relevant time period to explain how the Warden was directly involved in, encouraged, implicitly authorized, approved, knowingly acquiesced in, or in any way orchestrated the alleged unconstitutional conduct of any other jail employees. *Hays, supra*. Therefore, Brearton's complaint against Warden Meko will be dismissed because he has failed to state a claim against the Warden for which relief can be granted.

**B.     Claims against David Green**

It appears that his claim against the Green is based on the fact that he is the Deputy Warden of Security and because he wrote Green a letter about not being completely isolated from the general population inmates, even though he was a "Protective Custody" inmate. David Green's response to Brearton's letter states:

7

"I have received and reviewed your letter concerning your recreation and safety. Your safety is of foremost concern. I am presently looking into your situation." [D.E. 1-1, Page ID# 9].

Brearton may be attempting to claim that Green violated his Constitutional rights by failing to do more than respond to his letter and to look into the matter. Assuming Brearton is claiming that Green failed to act or protect him from harm, this claim is without merit, similar to his claim against Warden Meko, because there is no *respondeat superior* liability where the plaintiff alleges only that the defendant merely failed to act or control employees. *Shorts v. Bartholomew*, 255 F. App'x 46, 53 (6th Cir. 2007); *Salephour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). "Rather, the supervisors must have actively engaged in unconstitutional behavior." *Gregory v. Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

At a minimum a plaintiff must show that the official at least implicitly authorized, condoned, approved or knowingly acquiesced in the deprivation of the plaintiff's constitutional rights. *Hays*, 668 F.2d at 874; *Carter v. Wilkinson*, No. 2:05-CV-0380, 2009 WL 81217, at * 10 (S. D. Ohio, January 9, 2009). Brearton appears to claim only that Green and Meko failed to act in response to his

complaints about his safety needs; he does not allege that they directly participated in, condoned, or encouraged the alleged unconstitutional conduct committed by any other prison personnel.  Thus, he has failed to establish a viable Constitutional claim against Green.

## C.   Claims against Terry Hall, Lisa Bricky, Officer Jekins, Lieutenant Riggs, and Officer Fiffe

The Eighth Amendment claims against Terry Hall, Lisa Bricky, Officer Jekins, Lieutenant Riggs, and Officer Fiffe will be dismissed because they were not personally involved in the actions about which Brearton complains.  A plaintiff must plead that each government official-defendant, through his or her own actions, has violated the Constitution. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009); *Nwaebo v. Hawk Sawyer*, 100 F. App'x 367, 369 (6th Cir. 2004); *Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976).

As to Hall, Bricky, and Fiffe, Brearton only claims that they were the prison personnel who informed him, at some time, that he would no longer remain in Protective Custody and would be going back to the general prison population. Brearton does not claim that it was the decision of Hall, Bricky, and Fiffe to return him to the general population; in fact, he does not state who made that decision. His complaint simply indicates that they were the prison personnel who conveyed

that decision to him.  The action of Hall, Bricky, and Fiffe by informing Brearton that he was going back to the general population, without more, in insufficient to state a claim against them for a Constitutional rights violation.

As to Jekins and Riggs, it appears that Brearton named them as defendants because he states that on December 27, 2013, he informed "Sparks, Gilum, Jenkins, McKinney, Riggs, that Brearton wish [sic] to come out for Rec." [D.E. 4-1, Page ID# 20].  Brearton makes no other reference to Jekins and Riggs, other than naming them in the body of the Complaint where he lists all of the named defendants.  Brearton may be of the opinion that Jekins and Riggs are liable because they were on staff that day at the prison and were aware that he had requested to be released for recreation.  If that is the case, Brearton is mistaken.  Simply being on duty at the time of an alleged violation of an inmate's Constitutional rights is insufficient to impose liability against a prison official.

Consequently, Brearton fails to state an Eighth Amendment claim against Jekins and Riggs upon which relief may be granted  because he does not allege that they were personally involved in the alleged unlawful conduct.  His claims against these defendants will be dismissed.

**D.     Claims against Officer Sparks, Sergeant Gilum, and Officer McKinney**

Brearton alleges that McKinney, Sparks, and Gilum were the correctional officers who (1) told other inmates that he was a correctional informant, (2) were involved and/or participated in the events on December 27 and December 28, 2013, when the same general population inmate from Cell 4 was released on recreation at the same time he was released, (3) and were involved in and/or participated in his being placed in the shower, with the shower door then being locked, with the same Cell 4 general population inmate.

The Court will require Sparks, McKinney, and Gilum to respond to the Complaint because Brearton's Eighth Amendment claims against them are not facially frivolous.   The Eighth Amendment protects an inmate from prison officials' deliberate indifference to a substantial risk of serious harm to that inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Courts have long held that prison officials who identify an inmate as a "snitch" to other inmates, with the intent to provoke an assault or the fear of assault, demonstrate deliberate indifference to the inmate's safety and may be liable under the Eighth Amendment.   *Farmer*, 511 U.S. at 833; *Comstock v. McCrary*, 273 F.3d 693, 699 n. 2 (6th Cir. 2001); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th

11

Cir. 1992); *Catanzaro v. Michigan Dept. of Corrections*, No. 1:08-CV-11173, 2009 WL 4250027 (E.D. Mich., November 19, 2009); *David v. Hill*, 401 F. Supp.2d 749, 756-57 (S.D. Tex. 2005).     Brearton     claims     that     Sparks, McKinney, and Gilum were deliberately indifferent to his safety needs by telling other inmates that he was a "snitch" and by their actions on December 27 and December 28, 2013, when they failed to keep him segregated from a general population inmate and when they placed him in the shower with a general population inmate and then locked the shower door, all of which violated his safety and security needs.  At the screening stage, the Court must a prisoner's claims as true.  On that assumption, Brearton has alleged a colorable Eighth Amendment claim of deliberate indifference against Sparks, McKinney, and  Gilum.

Because Brearton is proceeding *in forma pauperis*, the Clerk of the Court and the United States Marshal's Service ("USMS") will serve defendants Sparks, McKinney, and Gilum with a summons and a copy of the complaint and attachments thereto on Brearton's behalf.  Fed. R. Civ. 4(c)(3) and 28 U.S.C. § 1915(d).

**E.    Request for Appointment of Counsel**

The Court will deny Brearton's request for the appointment of counsel, which is not a constitutional right in a civil case, but a privilege justified only by

exceptional circumstances. *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996). In determining whether exceptional circumstances exist, courts examine the complexity of the factual and legal issues involved and whether fundamental unfairness, impinging on the right to due process, would result if the request for appointment of counsel is denied. *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). The district court has discretion to grant or deny the request. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992).

Brearton has demonstrated that he is able to articulate his claims, file the appropriate pleadings, and otherwise prosecute this action. His remaining Eighth Amendment claims against Sparks, McKinney, and Gilum are not sufficiently complex or involved to warrant the appointment of counsel. For these reasons, the Court will deny his request for the appointment of counsel.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)     The Clerk of the Court shall amend the CM/ECF docket sheet to reflect Brearton's current mailing address: Jessie Brearton, #148091, Kentucky State Reformatory, 3001 West Highway 146, LaGrange, KY 40032.

(2)     The Clerk of the Court shall amend the CM/ECF docket sheet to reflect that Brearton has requested a jury trial.

(3)    Brearton's request for the appointment of counsel is **OVERRULED**.

(4)    Brearton's claims against David Green, Joseph Meko, Terry Hall, Lisa Bricky, M. Fiffe, Officer Jekins, and Lieutenant Riggs are **DENIED AND DISMISSED** and these Defendants are **DISMISSED** as parties to this action.

(5)    Brearton's claims asserted against Defendants Sparks, McKinney, and Gilum shall proceed.

(6)    The Clerk shall prepare the documents necessary for service of process upon:

      a.    Correctional Officer Sparks, Little Sandy Correctional Complex;

      b.    Correctional Officer McKinney, Little Sandy Correctional Complex; and,

      c.    Sargent Gilum, Little Sandy Correctional Complex.

(7)    The Clerk shall prepare a "Service Packet" consisting of the following documents for service of process upon these defendants:

      a.    a completed summons form;

      b.    the Complaint [R. 1; R. 4];

      c.    this Order; and

      d.    a completed USMS Form 285.

14

(8)    The Clerk shall provide the Service Packet(s) to the USMS in Ashland, Kentucky.

(9)    Service of Process upon Defendants Officer Sparks, Officer McKinney,  and Sargent Gilum shall be conducted by the USMS in Ashland, Kentucky, by serving a Service Packet *personally* upon each of them, through arrangements with Little Sandy Correctional Complex.

The USMS is responsible for ensuring that each defendant is successfully served with process.  In the event that an attempt at service upon a defendant is unsuccessful, the USMS shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

(10)   The Clerk is further directed to serve a copy of this Order on the Kentucky Department of Corrections, and to note the service in the docket sheet;

(11)   The plaintiff **SHALL**:

    a.    Immediately advise the Clerk's Office of any change in his current mailing address.  **Failure to do so may result in dismissal of this case.**

    b.    Communicate with the court *solely* through notices or motions filed with the Clerk's Office.  **The court will disregard correspondence sent directly to the judge's chambers.**

15

c.      In every notice, motion, or paper filed with the court, certify in writing that he has mailed a copy to every defendant (or his or her attorney) and state the date of mailing. **The court will disregard any notice or motion which does not include this certification.**

This 8th day of January, 2015.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge

16